DESSAUNIER *et al.*, Appellants, v. MURPHY, Respondent.

1. The doctrine of presuming conveyances rests mainly upon long and uninterrupted possession in the owners of the title in favor of which the presumption is indulged; if this possession be had, not under the title in favor of which such a presumption is invoked, but under another title not shown to be owned by the person so invoking it, a conveyance will not be presumed to supply the defect.

### Appeal from St. Louis Land Court.

This case has heretofore been before the supreme court. For the report of the decision of the supreme court see Dessaunier v. Murphy, 22 Mo. 95. In addition to the facts in evidence on the former trial, Henry W. Williams was examined as a witness in behalf of defendant. He testified that since 1846, his business had been that of an investigator of titles to real estate in St. Louis; that during that time he had taken abstracts of all the archives and a large portion of the deeds in the office of the recorder; that he had met with references to judicial sales of which he could find no evidence except recitals in deeds. The plaintiff also introduced in evidence various deeds showing that A. L. Langham had acquired a portion of the Bizette title previous to 1818; also other evidence tending to show that Langham claimed title through Bizette.

The plaintiff requested the court to instruct the jury as follows: "The land in dispute was confirmed by act of Congress of the 29th of April, 1816, to be surveyed to the legal representatives of William Bizette; and if the jury find from the evidence that said land was purchased by Charles Bizette on the 18th of February, 1775, and that Charles Bizette died leaving three children his heirs, and that Louis Boissy married one of the daughters of said Charles Bizette, and that Boissy died leaving only five children his heirs; and that Emily Dessaunier and Louise Deroin, two of the plaintiffs, were children of said Boissy, and that Paschall Mallett, Louis Mallett, Francis Mallett, Charles Mallett, and Mallia

Mallett, and Maria Louise Deroin, the other plaintiffs, are the children of Margaret Boissy, the daughter of said Louise Boissy and Paschall Mallett her husband, and that said Margaret and her husband are dead, then the jury will find in favor of the plaintiff for three-thirtieths or one-tenth part of the land sued for." This instruction the court gave, having added to it the following clause : " Unless the jury find for the defendant under the instruction given for defendant."

The court, at the instance of the defendant, gave the following instruction : " If the jury believe from the evidence that after the death of Charles Bizette and before October 12, 1782, the land in controversy in this suit was sold to Joseph Brazeau as a part of the estate of said Bizette, under the authority of the government then in power in the county of St. Louis, they should find for the defendant. Such an authorized sale may be shown by circumstantial and indirect evidence as well as by direct evidence."

The jury found for defendant.

*N. D. & G. P. Strong*, and *Morehead*, for appellants.

I. The copy of the receipt should have been excluded. It does not purport to be an original but a copy. It does not describe any particular piece of land. There were three pieces of land mentioned as belonging to the estate of Charles Bizette. It does not purport to have been given to Joseph Brazeau. It does not purport that the money was paid at all. It simply discharges Brazeau. It does not purport to be for land of Charles Bizette. It is signed simply " mark of ⋈ Provenchere," without designating John B. Provenchere, and without the attestation of a witness or acknowledgment. Having this want of authenticity, being signed by an illiterate man, if signed at all, it speaks of dollars, a currency then utterly unknown in Missouri. It was irrelevant ; it proves nothing. It derives no assistance from the face of the deed. The deed does not state when the money was paid. The deed is professedly founded on the receipt. Thirty years had elapsed since the assumed date of the transaction.

The heirs of Charles Bizette were more than thirty years of age. The deed does not purport to have been made by the authority of any court or government. In 1811 Provenchere was a mere stranger to the title.

II. Supposing the deed and receipt properly admitted in evidence, they furnish no evidence of any authorized sale of the land in dispute upon which the court was justified in submitting the fact to the jury.

III. The instruction given was erroneous.

*Todd*, for respondent.

I. There was evidence from which the jury might *lawfully* infer the existence of an authorized sale of the land in controversy to Joseph Brazeau after the death of Charles Bizette and prior to October, 1782. Perfect direct proof of the sale did not, it is true, exist. There was long continued, adverse, actual and highly public possession in constant view of most of the parties interested against the claim; this possession was for thirty-five years before the commencement of this suit, and in favor of this possession time had been running under the statute of limitations, against these plaintiffs and those under whom they claim, for nearly twenty years next before the commencement of this suit. This evidence is relied on only as corroborative of the other evidences in the case of an actual and lawful sale. 1st. The petition of widow Bizette for an inventory and sale of the property of the estate of Charles Bizette, deceased, her husband, for the purpose of paying debts and maintaining the children. 2d. The grant of the prayer, as shown by the proceedings of Gov. Cruzat. The inventory included this land. 3d. The appointment of Provenchere as *curator of the infant children of Charles Bizette.* 4th. The receipt of Provenchere to *Brazo* of October, 1782, with the deed of himself and wife, dated May, 1811. This deed shows that the land in controversy was sold to Brazeau at public sale at the church. The debts of C. Bizette required a sale of the property of his estate. Such a sale was legally authorized and begun as

early as September, 1781. Provenchere, as curator of the children, was entrusted with all the property not sold on the day of sale. He was authorized as curator to sell. (See White Recop. 16.) If he sold this land to Brazeau and Brazeau paid for it, said receipt, if genuine, would be a usual and proper evidence of the sale and voucher of payment, and its date would be a consistent fact ; and if it was his duty to report the sale and to make a record of it, its non-production should not affect Brazeau's right as evidenced by the receipt, because Provenchere may have omitted to report. Provenchere may have reported and the record may now be lost, as Williams' evidence shows may have been the fact. If the receipt was genuine and made at the date of it, it should satisfy every mind that such a sale was made. The receipt was genuine. Its genuineness was a question for the jury. Mrs. Provenchere joined in the deed. If there had been a sale to Brazeau, she must have known it. If there was no such sale, Provenchere and his wife conspired to cheat their children. Brazeau conveyed to his nephews, in 1811, stating his title to be derived from said sale. The deed of the Brazeaus to Langham of the adjoining tract shows that they had already conveyed the Bizette tract to him. Since that time Langham and those claiming under him have been in possession of the land.

NAPTON, Judge, delivered the opinion of the court.

As we understand the facts of this case, it is not one in which a court could presume a conveyance or direct a jury to presume one. It does not fall within any class of cases in which such presumptions have been indulged. The presumption is invoked here not to sustain an ancient possession held under the title sought to be aided by the presumption, but to make out an outstanding title, adverse to that under which the defendants hold and under which the plaintiffs claim.

Langham took possession in 1818 under deeds from the heirs of Bizette. The Brazeau title derived through Proven-

chere, after being traced to the two nephews of Brazeau in 1811, disappears and no traces of it are seen afterwards. No possession had ever been held under it, beyond all doubt, up to this time, although nearly thirty years had elapsed. The first possession of the land since the death of Charles Bizette is found in Langham in 1818, under the Bizette title, and that possession has continued to the present day. The nephews of Brazeau, who held what is here termed the Brazeau title originally derived from Provenchere and conveyed to them by their uncle in 1811, conveyed to Langham an adjoining tract in 1818, and in referring to the tract now in controversy spoke of it as belonging to Langham. No allusion is made to their title to this tract in the deed. It would be a violent presumption to infer from this that they had previously made a conveyance to Langham, as it is perfectly easy to account for such language without making such an inference. Langham was in possession of the land by deeds under the Bizette title. The Brazeaus may have considered their title worthless. The recital that the adjoining tract belonged to Langham is just as true if Langham's title was derived from Bizette, as it would be if it had been derived from them. Besides, the recital, whatever it may imply, can not bind the present plaintiffs, who claim under the Bizette title, and are no way concerned in or affected by the deed from the Brazeaus for an adjoining tract of land. At all events no deed from the Brazeaus to Langham appears in this case, and neither the court nor jury were asked to presume one. We may assume, then, that no such deed existed, and consequently Langham derived no title to the premises in controversy from the Brazeaus.

The jury then in this case were permitted to infer from circumstances a valid sale of this land to Brazeau in 1782, not to protect a possession acquired under such sale, but to defend a possession acquired under the heirs of Bizette against a claim of one of the heirs.

The doctrine of presuming conveyances mainly rests upon long and uninterrupted possession in the owners of the title

Dessaunier v. Murphy.

in favor of which the presumption is indulged. Where a defendant in ejectment takes shelter under an outstanding title, as he may do, he must take it as he finds it, and it will be treated by the court as it would be if its owners were asserting it as plaintiffs. Could the Brazeaus or their representatives claim the assistance of presumption in a suit against the present defendants? If they could not, then the defendants, resorting to it for protection, can not strengthen it or cure its defects by connecting with it their *possession under another* and adverse title.

So far as mere presumptions of fact are concerned, they would seem to be rather against the validity of the title of Brazeau, if we consider the acts of those who hold this title as entitled to much weight in determining its value. No possession was ever taken under it by any one. The Provencheres—both father and son—and Langham and the Brazeaus did not appear to regard the title as valuable from 1811 up to 1818. Langham was busy in buying up branches of the Bizette title, and did not think it worth while to buy the Brazeau title to this tract, although he must have been aware of it by his purchase of an adjoining tract, the title of which had the same origin and the same owners. It would seem that John L. Provenchere had no confidence in the Brazeau title, since it was through him that Langham derived a portion of the Bizette title. Provenchere could hardly be ignorant of the existence and character of the Brazeau title, as it originated in a supposed sale made by his father. If indeed we could presume that Langham, in 1818, when he went into possession of this land, had previously acquired a conveyance from the two Brazeaus, the case would present entirely another aspect. But the case was not tried upon any such hypothesis. The jury did not pass upon any such fact. We must suppose that no such deed existed, as no such deed was shown, and no reference to any such deed is to be found in any of the conveyances made of this land or their recitals. The deed of 1811, from Provenchere to Brazeau, is certainly evidence to show that at that date Brazeau

considered his purchase available, yet he immediately transferred the title to his nephews and they never took possession. Nothing further is ever heard of it in all the subsequent acquisitions of title by Langham to this and adjoining tracts of land, in all of which the Provencheres and Brazeaus were concerned. This title is now resuscitated, after a lapse of nearly forty years, to protect the interest of those who hold under the Bizette title, but who it seems did not acquire the whole title.

We do not wish to be understood as asserting that an owner or claimant of land prejudices his title by buying up outstanding claims. Such purchases are common and altogether commendable, and ought not to create any prejudice against the title which proves to be available. If Langham had been the owner of the Brazeau title, his subsequent purchase from the heirs of Bizette ought not to have any influence in impairing the value of his original title. But we have seen that Langham and his assignees do not occupy this position.

We concede the force of the reasoning by which the counsel for the defendant has maintained the genuineness of the receipt of 1782. The argument was certainly ingenious, perhaps conclusive. We think the paper was a genuine one and that the jury were well warranted in coming to this conclusion; but it is not pretended that this paper alone makes out a valid sale in 1782 to Joseph Brazeau. If a possession had been taken under this receipt or the deed following it, then a court or jury might well be permitted to presume that every thing necessary under the law to be done towards passing the title to Brazeau had been done. Every legal presumption will be made to sustain long and ancient possession, but the possession must go along with the title whose deficiencies are sought to be covered up. As neither the defendants nor those from whom they derived title and possession ever held under the title they now seek to set up, they have no other protection against the claim as-

serted in this case except such as their possession under the statute of limitations gives them.

As the case was not tried upon this defence of limitation, we have not looked into the facts with any view to see what result would be produced by the statute of limitations. We shall therefore reverse the judgment and remand the cause; the other judges concur.